Daniel J. Kaiser [DK-9387]
KAISER SAURBORN & MAIR, P.C.
111 Broadway, 18th Floor
New York, New York 10006
(212) 338-9100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ALICE WEISS,

                                                                                                05 Civ. 3310 (GBD) (DFE)

        Plaintiff,

    -against-

MORGAN STANLEY INVESTMENT
MANAGEMENT,

        Defendant.
-----------------------------------------------------X

### PLAINTIFF'S RULE 56.1 STATEMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, plaintiff, Alice Weiss, submits the following statement in opposition to the statement of material facts filed by the defendant in support of its motion for summary judgment.

    1.    Admit.

    2.    Admit.

    3.    Admit.

    4.    Admit, except deny that <u>all</u> teams developed their own strategy.

    5.    Admit that the plaintiff completed an employment application for Dean Witter; admit that she answered the question as recited; admit that Bache & Co involuntarily terminated her employment.

6. Admit.

7. Admit that she voluntarily and temporarily left her employment at Bache & Co. to take maternity leave [Weiss Dep. at p. 26]

8. Admit.

9. Admit.

10. Admits that there were gaps in employment with temporary jobs

11. Admit.

12. Admit that Morgan Stanley has probably both terminated and not terminated employees for providing false information on employment applications under a variety of circumstances.

13. Admit.

14. Admit that in 1985, Dean Witter promoted plaintiff to the title of Assistant Vice President.

15. Admit that in 1987, the plaintiff was assigned to manage the Value Added Fund and was designated a junior portfolio manager.

16. Admit that in 1989, the plaintiff was then designated a portfolio manager.

17. Admit.

18. Admit, except deny that the plaintiff was part of the GIG group or Core growth team for most of her employment at Morgan Stanley, only the last two or three years.

19. Admits that index funds are usually but not always tied to a particular index, but even then such funds have strategies that differ from simply following that index. Management of some index funds can be formulaic but often is not, and index funds do not always hold shares in the same proportion as the underlying index. [Weiss Decl. ¶ ]

2

20. Admit.

21. Admit, except deny that plaintiff worked in the Core growth group except for the last few years of her employment at Morgan Stanley.

22. Admit, except deny that the Value-Added Fund was a mere index fund. [Weiss Dep. at p. 138]

23. Admit, except deny that the KLD Social Index Fund was an index fund to the extent that implies it was based on a publicly-disseminated index associated with that fund, as opposed to that commissioned by Morgan Stanley from KLD. [Weiss Dep. at p. 193]

24. Admit.

25. Admit.

26. Admit that after September 30, 2003, Morgan Stanley fired more than 50 persons, including the plaintiff, most of whom worked in West Conshohocken, Pennsylvania. Admit that Guy Rutherfurd was reassigned but continued to remain employed by Morgan Stanley.

27. Admit that Messrs. Scacco and Mazzella lost their jobs at the same time as the plaintiff.

28. Admit that of those persons in the group, some were racial minorities and/or women and/or those over the age of 40.

29. Admit.

30. Admit.

31. Admit.

32. Deny that more is <u>necessarily</u> required for each promotion to each higher title. [Weiss Dep. at p. 559]

33. Admit that Executive Director is a senior position and one of the higher titles at

3

Morgan Stanley. [Weiss Dep. at p. 560]

34. Admit that promotion to Executive Director was not based solely on longevity, but deny that contribution in areas other than in assigned responsibilities or leadership or teamwork was an absolute requirement to promotion to Executive Director. [Weiss Decl. at ¶ 7]

35. Admit.

36. Admit that based on her retaliatory termination in September 2003, the last time prior thereto that a promotion would have been announced for plaintiff was December 2002.

37. While some generic information relating to the promotion process may have been accessible to Morgan Stanley employees, the promotion process was opaque and secretive. [Weiss Decl. at ¶ 7]

38. Admit that while some employees were not promoted beyond Vice President, and promotions were not simply based on longevity, contend that all of the men mentioned had years less seniority than plaintiff, all of them together had substantially fewer assets under management than the plaintiff, and none other than Mr. Copper managed a mutual fund, and Copper's fund did not perform as well as, or was a popular as, or brought in as much revenue as plaintiff's. [Weiss Decl. at ¶ 7]

39. Admit the compensation amounts listed, but deny that the duties and responsibilities of those listed were comparable to the plaintiff's and contend that of the 5 fund managers in the Core growth group, Aaron Clark, Thomas Copper, Kevin Jung, Guy Rutherfurd and the plaintiff, the plaintiff was paid the least. [Def's Exh. 27]

40. Admit that until 2000, Morgan Stanley's evaluation process involved solely an employee and her immediate and indirect supervisors.

41. Admit that whatever scores she received in her evaluations, the plaintiff received

4

no further promotions after 1990.

42. Admit that before 2000, she was reviewed by Messrs. Rutherfurd, Hinchcliffe, Connolly and Vander Viet, but was never promoted after 1990, which failure she contends was discriminatory.

43. Admits that after 2000, the review process included the opportunity for participation from an employee's peers and subordinates, in addition to supervisors.

44. Admit.

45. Refer to the document for the contents thereof.

46. Refer to the document for the contents thereof.

47. Refer to the document for the contents thereof.

48. Admit that the plaintiff does not believe Ms. Kolleeny discriminated against her and refer to document for the contents thereof.

49. Refer to the document for the contents thereof.

50. Refer to the document for the contents thereof.

51. Refer to the document for the contents thereof.

52. Refer to the document for the contents thereof.

53. Refer to the document for the contents thereof.

54. Admit

55. Admit but deny that receiving this designation was a precondition to managing the fund or that she only assisted in managing the fund, as opposed to having primary responsibility for management. [Weiss Decl. ¶ 3]

56. Deny that the plaintiff became primarily responsible for managing the fund only after being designated a portfolio manager. [Weiss Decl. ¶ 3]

57. Admit, but deny that it is possible to hold exactly .2% of each stock at any one time. [Weiss Decl. ¶ 17]

58. Admit.

59. Admit.

60. Admit, depending on the size of cash flow.

61. Admit.

62. Admit.

63. Admit.

64. Admit, except deny that it was the plaintiff who requested semi-annual rebalancing.

65. Deny. [Def's. Exh. 45]

66. Admit the document says that.

67. Admit.

68. Admit Mr. Moore testifies to that, but denies the accuracy thereof.

69. Admit Mr. Moore testifies to that, but denies that those conclusions are correct.

70. Admit Mr. Moore testifies to that, but denies that those conclusions are correct.

71. Admit that Mr. Moore held that belief, but denies the accuracy thereof.

72. Admit.

73. Admit.

74. Admit.

75. Admit.

76. Admit.

77. Deny knowledge of Mr. Rutherfurd's state of mind.

78. Admit.

79. Admit.

80. Admit that plaintiff was asked to return to work and that Messrs. Jung and Moore were asked to review the trading numbers at the end of the day.

81. Deny knowledge or information.

82. Deny knowledge or information.

83. Deny knowledge or information.

84. Deny knowledge or information.

85. Deny. [Weiss Decl. at ¶ 11].

86. Deny. [Rutherfurd Aff. at ¶ 8; Gupta Dep. at pp. 70, 80-81; McAlinden Dep. at pp. 52-54]

87. Deny. [Rutherfurd Aff. at ¶ 8; Rutherfurd Dep. at p. 51; Gupta Dep. at pp. 70, 80-81; McAlinden Dep. at pp. 52-54]

88. Deny. [Rutherfurd Aff. at ¶ 8; Rutherfurd Dep .at p. 51; Gupta Dep. at pp. 70, 80-81; McAlinden Dep. at pp. 52-54]

89. Admit that during the time Mr. Jung worked under Mr. Rutherford, up to and including 2003, he had interactions and was assisting in some limited trading activities for other funds or groups at Morgan Stanley, in addition to the work he was doing on his assigned funds. [Jung Dep. at p. 73]

90. Admit that Mr. Rutherfurd so testified.

91. Deny. [Rutherfurd Dep. at p. 51; Gupta Dep. at pp. 70, 80-81; McAlinden Dep. at pp. 52-54]

92. Admit.

7

93. Deny. [Rutherfurd Dep. at p. 51; Gupta Dep. at pp. 70, 80-81; McAlinden Dep. at pp. 52-54]

94. Admit.

95. Admit.

96. Admit.

97. Admit that 6 months to a year after plaintiff spoke with Human Resources about Hinchcliffe, her supervision was changed. [Weiss Dep. at p. 98]

98. Admit.

99. Deny. [Rutherfurd Dep. at p. 51; Gupta Dep. at pp. 70, 80-81; McAlinden Dep. at pp. 52-54]

100. Admit.

101. Admit that Rutherfurd allowed her to attend some out-of-town conferences but not others; admit that Rutherfurd assigned her the KLD Social Index Fund – a fund with a limited market that was not likely to perform well; that while Rutherfurd was her manager, she was allowed to speak to the Board on only a single occasion and at that event her statements were scripted, and was only allowed to speak with brokers and wholesalers on a few occasions, while the bulk of the contact was handled by those who did not manage the fund or with no real connection thereto. [Weiss Decl. at ¶ 5]

102. Admit that Mr. Rutherfurd so testified.

103. Admit.

104. Deny but admit that over the course of the 15 years she managed the Value-Added Fund, she was allowed on one occasion to visit one branch office and to participate in one teleconference call on international and worldwide accounts, and on sporadic and rare occasions

to participate in interactions with brokers. [Weiss Decl. at ¶ 5]

Dated:  New York, New York
        November 7, 2007

                                KAISER SAURBORN & MAIR, P.C.
                                Attorneys for plaintiff

                                Daniel J. Kaiser [DK-9387]

                                111 Broadway, 18th Floor
                                New York, New York 10006
                                (212) 338-9100