UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ALICE WEISS,                                                    05 Civ. 3310 (GBD) (DFE)

                            Plaintiff,

        -against-

MORGAN STANLEY INVESTMENT
MANAGEMENT,

                            Defendant.
-----------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

Kaiser Saurborn & Mair, P.C.
111 Broadway, 18th floor
New York, New York 10006
(212) 338-9100
Attorneys for Plaintiff

*Of Counsel*:
Daniel J. Kaiser
Henry L. Saurborn, Jr.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I
WHEN THE RECORD EVIDENCE PERMITS REASONABLE
INFERENCES TO BE DRAWN IN FAVOR OF THE PLAINTIFF
ASSERTING RETALIATION AND DISCRIMINATION CLAIMS,
SUMMARY JUDGMENT MAY NOT BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II
A BONA FIDE REDUCTION-IN-FORCE DOES NOT SHIELD
AN EMPLOYER FROM A RETALIATION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT III
PLAINTIFF EASILY MEETS THE ELEMENTS OF A PRIMA
FACIE CASE OF RETALIATORY DISCHARGE

    A.     The Elements of a Prima Facie Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.     The First, Second and Third Prongs Are Indisputable . . . . . . . . . . . . . . . . . . 7

    C.     There Is Substantial Evidence of A Causal Connection . . . . . . . . . . . . . . . . . 8

    1.     Temporal proximity between the complaint and the
         adverse employment action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    2.     Morgan Stanley has given conflicting accounts
         about plaintiff's termination which have been
         proven to be false . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    a.     Morgan Stanley's false affidavit to the EEOC . . . . . . . . . . . . . . . . . . . . 10

    b.     The false story of who had responsibilityfor the decision to
         terminate Ms. Weiss concocted for use in this lawsuit . . . . . . . . . . . . . . . . 12

c.     The RIF document identifying Ms. Weiss
as selected for termination on and selected
by Messrs. Gupta and Rutherfurd is plainly
false and flies in the face of the testimony of
Morgan Stanley managers .......................................... 15

d.     Ms. Weiss was more qualified than Kevin Jung ........................ 16

e.     Morgan Stanley made no effort to reassign
Ms. Weiss, a twenty-year veteran with a
Stellar track record, as compared to its efforts
to reassign many of its other professionals ........................... 17

f.     The RIF Document for Brian Mazzella, who
principally worked for Ms. Weiss, indicated
he was terminated on September 29, 2007 ........................... 17

POINT IV
MS. WEISS HAS ALSO DEMONSTRATED NOT ONLY A
PRIMA FACIE CASE, BUT SUBSTANTIAL EVIDENCE OF
GENDER DISCRIMINATION BASED ON NUMEROUS ACTS
WHICH ARE MATERIALLY ADVERSE AND WHICH
CONSTITUTE ACTIONABLE DISCRIMINATION BASED ON
UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT ................ 18

A.     Prima Facie Case ................................................ 18

B.     Adverse Employment Actions ................................... 19

C.     Defendant's Burden of Production ................................. 20

D.     Evidence of Pretext .............................................. 21

POINT V
MS. WEISS'S COMPLAINT, AS WELL AS HER EEOC
FILING, CONTAINED ALLEGATIONS OF ON-GOING
DISCRIMINATORY CONDUCT OCCURRING BOTH
WITHIN AND WITHOUT THE FILING PERIOD; AND THERE
ARE PENDENT STATE AND LOCAL LAW CLAIMS WHICH
REACH BACK BEYOND 300 DAYS ................................... 22

A.     Plaintiff's Title VII Claims ........................................ 22

B.     Plaintiff's Pendent State and Local Claims .......................... 25

POINT VI
MORGAN STANLEY HAS NOT CARRIED ITS BURDEN TO
PROVE IT IS  ENTITLED TO CUT OFF MS. WEISS'S  DAMAGES
FOR OMISSIONS OR MISSTATEMENTS IN APPLYING FOR A
JOB WITH DEAN WITTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

# TABLE OF AUTHORITIES

Cases

*Binder v. Long Island Lighting Co.*, 57 F.3d 193 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 10

*Blanchard v. Stone Safety Corp.*, 935 F.2d 18 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2nd Cir.1994) . . . . . . . . . . . . . . . . . . 6, 18

*Cifra v. General Electric Co.*, 252 F.3d 205 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cornwell v. Robinson*, 23 F.3d 694 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033 (2nd Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Curley v. St. John's Univ.*, 199 F.Supp.2d 181 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . 20

*Danzer v. Norden Systems, Inc.*, 151 F.3d 50 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Davis v. State Univ. of New York*, 802 F.2d 638 (2nd Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . 8

*DeCintio v. Westchester County Medical Center*, 821 F.2d 111 (2nd Cir. 1987) . . . . . . . . . . . . 8

*De La Cruz v. New York City Human Resources Admin.*,
82 F.3d 16 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2nd Cir.1988) . . . . . . . . . . . . . . . . . . . . . . 18

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*EEOC v. Ethan Allen*, 44 F.3d 116 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Engelmann v. National Broadcasting Co.*, 1996 WL 76107 (S.D.N.Y. 1996) . . . . . . . . . . . . . . 24

*Flores v. Buy Buy Baby, Inc.*, 118 F.Supp.2d 425 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . 27

*Gallagher v. Delaney*, 139 F.3d 338 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gallo v. Prudential Residential Services*, 22 F.3d 1219 (2nd Cir. 1994) . . . . . . . . . . . . . . . . 5, 21

iv

*James v. New York Racing Ass'n*, 233 F.3d 149 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Johnson v. Honeywell Information Systems, Inc.*, 955 F.2d 409
(6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Katz v. City of New York*, 1996 U.S. Dist. LEXIS 15430 (S.D.N.Y.1996) . . . . . . . . . . . . . . . 24

*Kerzer v. Kingly Mfg.*, 156 F.3d 396 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kipper v. Doron Precision Systems, Inc.*, 194 A.D.2d 855 (3rd Dep't 1993) . . . . . . . . . . . . . . 6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) . . . . . . . . . . . . . . . . 26-27

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
842 F.2d 590 (2nd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Muller v. Costello*, 187 F.3d 298 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . 22-23

*Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 798 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 19

*Ramseur v. Chase Manhattan Bank*, 865 F.2d 460 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . 6

*Rashid v. Beth Israel Medical Center*, 1998 U.S. Dist. LEXIS 15602
(S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . 9, 21

*Regional Economic Community Action Program, Inc. v.
City of Middletown*, 294 F.3d 35 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rivera v. Puerto Rican Home Attendants Services, Inc.*,
930 F. Supp. 124 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Roberts v. Sedgwick Co. Sheriff's Dep't.* 302 F.Supp.2d 1256
(D.Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Scaria v. Rubin*, 117 F.3d 652 (2nd Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Shay v. Brady*, 926 F.Supp. 1197 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667
(S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Smith v. American President Lines Ltd.*, 571 F.2d 102 (2nd Cir. 1978) . . . . . . . . . . . . . . . . . . 24

*Smithtown Central Sch. Dist. v. Beller*, 120 A.D.2d 726
(2nd Dep't 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Streeter v. Joint Industry Bd of Electrical Industry*, 767 F. Supp. 520
(S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tomka v. The Seiler Corp.*, 66 F.3d 1295 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Treglia v. Town of Manlius*, 313 F.3d 713 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983) . . . . . . . . . . 6

*Woroski v. Nashua Corp.*, 31 F.3d 105 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

On this record there is compelling evidence that Alice Weiss was selected for inclusion in a reduction-in-force ("RIF") announced by defendant Morgan Stanley Investment Management ("Morgan Stanley") on September 30, 2003 because she complained of gender discrimination on September 25, 2003. The evidence includes an array of documentary and testimonial admissions, as well as an acknowledged false affidavit submitted by Morgan Stanley to the United States Equal Employment Opportunity Commission ("EEOC"). Nevertheless, Morgan Stanley claims that its decision to fire Ms. Weiss was made before she complained. The record evidence is to the contrary.

- In a sworn affidavit submitted to the EEOC, Guy Rutherfurd, Ms. Weiss's supervisor and the person identified by Morgan Stanley as one of the decision-makers, represented that the decision to terminate Ms. Weiss was made well before her gender discrimination complaint. By contrast, at his deposition in July 2007, Mr. Rutherfurd conceded that he did not know when the decision was made and when asked why his affidavit to the EEOC contained a contrary representation, he responded: "That's a good question."

- While Rutherfurd vaguely recalled hypothetical discussions during the summer of 2003 about whether to include Ms. Weiss in a possible RIF, he unambiguously testified that he did not make the decision to include Ms. Weiss in the RIF and that the decision was communicated to him by another Morgan Stanley employee.

- Rajesh Gupta, the other manager Morgan Stanley identified as the decision-maker concerning the termination of Ms. Weiss's employment, also expressly disavowed responsibility for the decision. Like Mr. Rutherfurd, he testified that the decision was communicated to him by another Morgan Stanley employee.

- Donna Litvinsky, a former Morgan Stanley Human Resources manager, testified that Messrs. Gupta and Rutherfurd made the decision to terminate Ms. Weiss. This was squarely contradicted by both men. Moreover, an internal Morgan Stanley HR document

1

was produced that identified both men as the decision-makers – a claim their sworn testimony demonstrated to be false.

- In discovery, Morgan Stanley produced questionable documents that attempted to place the decision to terminate Ms. Weiss in the summer of 2003. Every Morgan Stanley executive deposed, however, testified that, while preliminary discussions for a possible RIF began earlier in the year, a final decision was not made until the fall of 2003. Indeed, the final analysis report upon which the RIF was based was not generated until September 29, 2003.

- Ms. Weiss – a 20-year employee of Morgan Stanley and Dean Witter (which merged into Morgan Stanley in 1997), who had run the firm's most highly-rated fund – was not even considered for reassignment, as compared to numerous other employees who were reassigned within the firm.

While there may well have been preliminary musings within Morgan Stanley about whether to terminate Ms. Weiss, and many other employees, as part of a potential RIF, the deposition testimony of the "decision makers" was unambiguous – that they did not play any role in the decision to fire Ms. Weiss, and they did not know who did make that decision or when it was made. None of that stopped Morgan Stanley from generating a RIF questionnaire which conveniently attempted to place the timing of the decision in the summer of 2003 in advance of Ms. Weiss' discrimination complaint.

Morgan Stanley cannot articulate a legitimate non-discriminatory reason for Ms. Weiss's termination, much less adduce evidence supporting its entitlement to summary judgment, because it cannot identify who fired her, when the decision was made, and after having submitted a false affidavit to the EEOC concerning the most critical fact contained within it – responsibility and the bona fides of what Ms. Weiss alleged to be her retaliatory termination in September 2003. As a result, its motion should be denied and the matter should be submitted to

2

a jury for determination.

## STATEMENT OF FACTS

In March 1982, Ms. Weiss joined the InterCapital division of Dean Witter, which in 1997 merged with Morgan Stanley and thereafter became known as Morgan Stanley Investment Management. During her tenure with Dean Witter and later Morgan Stanley, Ms. Weiss proposed numerous ideas for investment funds, which she would then test to demonstrate its efficacy. In December 1987, Ms. Weiss was assigned to manage the defendant's Value-Added Fund, a fund that she had proposed previously to Dean Witter management. Ms. Weiss managed this fund with no day-to-day supervision from anyone. Despite her excellent performance and contribution within the organization, Ms. Weiss, one of the few women managers, was promoted at a glacial pace.

In 1990, after almost 8 years with Dean Witter, Ms. Weiss was finally promoted from Assistant Vice President to Vice President. At that time, she had been successfully managing the Value-Added Fund for almost three years. That was the last promotion she was to receive, however, and she would remain a Vice President for the next 13 years (and Morgan Stanley never promoted Ms. Weiss once Dean Witter merged into it), despite the fact that under her guidance the Value-Added Fund remained the highest-rated fund at Morgan Stanley – receiving a 5-star Morningstar rating for the three-, five- and 10-year periods.

After she started managing funds, Ms. Weiss regularly requested promotion from her position as Vice President. All such promotions were denied. Her last discussion on the issue took place on September 25, 2003, when she met with her then-supervisor, Guy Rutherfurd.

When Mr. Rutherfurd advised her that she was again being passed over for promotion, she expressed her dismay and belief that the decision was discriminatorily-based on her gender. Five days later – on September 30, 2003 – Morgan Stanley announced layoffs in connection with a RIF. Morgan Stanley included Ms. Weiss in the RIF, but gave her absolutely no prior notice that she was under consideration for selection. While most of her professional colleagues were offered reassignment within Morgan Stanley, even those like Mr. Rutherfurd whose funds were closed down due to poor performance, she was not.

Morgan Stanley concedes that Ms. Weiss complained of gender discrimination to Mr. Rutherfurd on September 25, 2003. No one from Morgan Stanley was properly identified as the individual who decided to include Ms. Weiss in the RIF announced on September 30, 2003. Morgan Stanley's RIF documents state that the decision to fire Ms. Weiss was completed on July 22, 2003 and that the decision was made by Messrs. Gupta and Rutherfurd. [For a copy of RIF document see Exhibit "H" to Kaiser Affirmation] However, Morgan Stanley's executives directly contradict the documents in terms of when and who made the termination decision. (Rutherfurd Dep. at pp. 66-68; McAlinden Dep. at pp. 52-54;Gupta Dep. at pp. 70, 80-82 ) Donna Litvinsky, HR manager, testified that Gupta and/or Rutherfurd made the decision to fire Ms. Weiss.( Litvinsky Dep. at pp. 23-26, 56) Messrs. Gupta and Rutherfurd flat out denied this was true and further professed zero knowledge of who actually made the decision. (Rutherfurd Dep. at pp. 66-68; McAlinden Dep. at pp. 52-54;Gupta Dep. at pp. 70, 80-82 ). Moreover, Mr. Rutherfurd conceded providing false testimony to the EEOC that the decision to fire Ms. Weiss preceded her gender discrimination complaint. [Rutherfurd Dep. at pp. 66-68].

**ARGUMENT**

**POINT I**

**WHEN THE RECORD EVIDENCE PERMITS
REASONABLE INFERENCES TO BE DRAWN IN FAVOR
OF THE PLAINTIFF ASSERTING RETALIATION AND
DISCRIMINATION CLAIMS, SUMMARY JUDGMENT
MAY NOT BE GRANTED**

On a motion for summary judgment, "[t]he burden of showing that no factual dispute exists rests on the party seeking summary judgment." *Tomka v. The Seiler Corp.*, 66 F.3d 1295, 1304 (2nd Cir. 1995). Moreover, "[i]n assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Id.*

The role of the Court at the summary judgment stage "is confined to issue finding; it does not extend to issue resolution." *Tomka*, 66 F.3d at 1304 (quoting *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2nd Cir. 1994)). Thus, "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Id.* In other words, "[i]f a reasonable jury might evaluate the evidence to find the material propositions of fact a plaintiff must prove, summary judgment dismissing her suit must be denied." *Gallagher v. Delaney*, 139 F.3d 338, 345 (2nd Cir. 1998).

Moreover, "[w]hen a case turns on the intent of one party, as employment discrimination claims often do, a motion for summary judgment must be approached with special caution." *Rashid v. Beth Israel Medical Center*, 1998 U.S. Dist. LEXIS 15602, *4-5 (S.D.N.Y. 1998)(AGS). As the Second Circuit has repeatedly cautioned, "[s]ummary judgment should be

5

used 'sparingly' when, as is often the case in [discrimination] claims, state of mind or intent are at issue." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55 (2nd Cir. 1998); *see, Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196 (2nd Cir. 1995); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29 (2nd Cir. 1994); *Woroski v. Nashua Corp.,* 31 F.3d 105 (2nd Cir. 1994); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460 (2nd Cir. 1989). The Supreme Court, too, has aptly recognized, "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

Here, the sharply disputed facts concerning whether Ms. Weiss discriminated against because of her gender in the terms and conditions of her employment and whether she was terminated because of her discrimination complaint require that summary judgment be denied.

## POINT II

### A BONA FIDE REDUCTION-IN-FORCE DOES NOT SHIELD AN EMPLOYER FROM A RETALIATION CLAIM

An employer may not shield itself from a discrimination claim by hiding behind a re-organization or reduction-in-force. *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667, 677 (S.D.N.Y. 1995); *Kipper v. Doron Precision Systems, Inc.*, 194 A.D.2d 855 (3rd Dep't 1993). The ultimate legal question to be decided remains was the plaintiff included in the RIF because of illegal retaliatory and/or discriminatory motivations. *Danzer v. Norden Systems, Inc.*, 151 F.3d 50 (2nd Cir. 1998) (fact issues existed as to whether employee was included in RIF for discriminatory reasons); *Blanchard v. Stone Safety Corp.*, 935 F.2d 18 (2nd Cir. 1991) (summary judgment improvidently granted where fact issues existed as to whether plaintiff's inclusion in RIF was bona fide).

Here, while Ms. Weiss does not contend that Morgan Stanley implemented the company-wide RIF for a discriminatory purpose, she does maintain that she was included in the RIF announced at the end of September 2003 because she complained of gender discrimination a few days earlier. If Ms. Weiss demonstrates that Morgan Stanley's selection of her for inclusion in the RIF was motivated by a retaliatory motive, Morgan Stanley does not get a pass simply because the business purpose of the RIF itself was otherwise legitimate and non-discriminatory.

## POINT III

### PLAINTIFF EASILY MEETS THE ELEMENTS OF A
### PRIMA FACIE CASE OF RETALIATORY DISCHARGE

**A.** **The Elements of a Prima Facie Case**

Ms. Weiss was terminated in retaliation for complaining of national origin discrimination. A prima facie case of retaliation consists of the following elements:

> (1) the employee was engaged in an activity protected, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.

*Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2nd Cir. 2002); *Muller v. Costello*, 187 F.3d 298, 311 (2nd Cir. 1999). A plaintiff's burden at the prima facie stage is de minimus. *Treglia*, 313 F.3d at 719.

**B.** **The First, Second and Third Prongs Are Indisputable**

The record evidence demonstrates that on September 25, 2003, Ms. Weiss complained to her supervisor, Guy Rutherfurd, about what she believed to be discriminatory refusal to promote her. There is no dispute that a complaint of discrimination is protected activity.

7

Moreover, Morgan Stanley identified Mr. Rutherfurd as a primary decision-maker in the decision to terminate Ms. Weiss – the ultimate adverse employment action – which was announced just a few days later.

## C.    There Is Substantial Evidence of A Causal Connection

### 1.    Temporal proximity between the complaint and the adverse employment action

With regard to the fourth prong, it is well established that "temporal proximity can demonstrate a causal nexus" between the protected activity and the adverse action. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2nd Cir. 1988); *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2nd Cir. 1987) ("[p]roof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment"); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2nd Cir.1993) (prima facie causation established where adverse action took place one month after complaint and employer failed to follow its own procedures for addressing employee deficiencies); *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2nd Cir.1986) (finding prima facie causation where "protected activity was closely followed by adverse actions").

In *Treglia*, the Second Circuit held that temporal proximity of the kind that exists in this case is sufficient to meet the prima facie case:

> We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.... In this case many of the adverse employment actions took place within a few months of Treglia's alleged complaints . . . Defendant argues that the first allegedly retaliatory action after Treglia filed [his complaint] did not occur until almost a full year later . . . That argument, however, ignores Treglia's protected activity between those two dates . . . .

8

313 F.3d at 720 (citing *Cifra v. General Electric Co.*, 252 F.3d 205 (2nd Cir. 2001) ("[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." )).

Here, the temporal proximity evidence alone satisfies Ms. Weiss's minimal prima facie burden having been terminated within days of her September, 2003 discrimination complaint. However, the compelling evidence of Ms. Weiss' retaliation claim goes well beyond this temporal proof.

2. **Morgan Stanley has given conflicting accounts About plaintiff's termination which have been proven to be false**

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Court held that evidence that an employer's proffered reason for the adverse employment action was false could take many forms, including both circumstantial and direct evidence of a defendant's true intention. The High Court went on to note that : "In appropriate circumstances the trier of fact can reasonably infer from the falsity of the employer's explanation that the employer is dissembling to cover up a discriminatory purpose." *Id*. at 143. This is because "once the employer" justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.*

Thus, as the Second Circuit has explained, "[r]esort to a pretextual explanation is, like flight from the scene of a crime, evidence indicating consciousness of guilt, which is, of course, evidence of illegal conduct." *Binder v. Long Island Lighting Co.*, 57 F.3d 193, 200 (2nd Cir. 1995)); *EEOC v. Ethan Allen*, 44 F.3d 116, 120 (2nd Cir. 1994) ("From such discrepancies a

reasonable juror could infer that the explanations given by Ethan Allen at trial were pretextual, developed over time to counter the evidence suggesting discrimination. . . ."); *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241 (2nd Cir. 2005) (proof that employer's explanation unworthy of credence sufficient to support discrimination finding); *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35 (2nd Cir. 2002) (showing employer's explanation for termination false sufficient to defeat summary judgment); *Smithtown Central Sch. Dist. v. Beller*, 120 A.D.2d 726(2nd Dep't 1986) (illegal discrimination may be proven by showing that explanation offered by employer was "unworthy of credence").

### a. Morgan Stanley's false affidavit to the EEOC

In connection with the underlying EEOC administrative investigation of Ms. Weiss's charge of discrimination, Morgan Stanley submitted a sworn affidavit to the federal agency by Mr. Weiss's former supervisor, Guy Rutherfurd, which contained the following statement:

> Ms. Weiss was not terminated in retaliation for the concerns expressed to me on September 26, 2003. Rather, she was terminated on September 30, 2003 when her position was eliminated as a result of the large scale restructuring of the GIG. . .
> . **In fact, the decision to eliminate Ms. Weiss' position was completed on July 22, 2003, long before the concern expressed by her to me on September 26, 2003.**

(emphasis added) (A copy of Mr. Rutherfurd's Affidavit is annexed as Exhibit "J" to the accompanying Declaration of Daniel J. Kaiser)

During his deposition in July 2007, Mr. Rutherfurd acknowledged that the foregoing statement about when the decision to fire Ms. Weiss was made was false:

> Q.  Now in that paragraph it's written, "The decision to eliminate Ms. Weiss' position was completed on July 22, 2003, long before the concern expressed by her to me on September 26, 2003."

A.    Yes.

Q.    Now, consistent with your testimony here today, you do not know when the decision to terminate her position was completed; is that correct?

A.    That's correct.

Q.    Do you know why you included that sentence in this signed affidavit that you submitted to the EEOC.

A.    Well I think this is to support the first sentence which was that she was not terminated in retaliation for concerns expressed on the 26th, because on July 22nd it had already been decided that she was being terminated or that her position was being eliminated.

Q.    But you testified here today that you do not know when the decision was made to terminate her position. You testified in this deposition to that effect, correct?

A.    Yes.

Q.    So you don't know whether the decision to terminate her position was completed on July 22, 2003, you have no information about that correct?

A.    Okay. Yes.

Q.    So this is an affidavit from you. So I'm asking you why in paragraph 8 did you include information, in paragraph 8, in an affidavit signed by you, that you have no information about?

A.    **Good question. I can't answer that [emphasis added]**.

(Rutherfurd Dep. at pp. 66-68)

Morgan Stanley's submission of a conceded false affidavit to a federal agency in defense of Ms .Weiss' retaliation contention alone, without reference to any further evidence, in and of itself justifies denial of its summary judgment motion. There is, however, much more evidence supporting her claim of retaliation.

11

      **b.**    **The false story of who had responsibility**
                  **for the decision to terminate Ms. Weiss**
                  **concocted for use in this lawsuit**

Morgan Stanley has also been caught red-handed dissembling and manufacturing a story and proffering false or misleading documents in an effort to cover up its misdeeds. Its executives squarely contradict the position Morgan Stanley has asserted in defense of this action, as well as the stories of each other, and the story suggested in the firm's proffered RIF documents. The firm also cannot truthfully identify who made the decision to fire Ms. Weiss or when that decision was made. Someone within Morgan Stanley had to have made the challenged decision, and yet not one of those identified by Morgan Stanley as having made the decision is prepared to accept responsibility for it.

All of the defendant managers in the chain of command in Ms. Weiss' department were deposed along with the HR representative principally responsible for implementing the RIF. All denied that they participated in the actual decision to fire Ms. Weiss. Mr. Gupta, the Chief Administrative Officer testified:

> Q. Now prior to Alice Weiss being, the decision being made to terminate Alice Weiss, did you speak to Mr. McAlinden or any other Morgan Stanley employee and say, "As a consequence of this study, I recommend, "meaning Raj Gupta, " I recommend that Alice Weiss be terminated" ?
>
> A. Absolutely not. All equity managers reported to Joe McAlinden. I was in no position to make a decision on anybody that was in equity management.
>
>                     *   *   *
>
> Q. Did you communicate with Guy Rutherfurd regarding the subject as to whether Alice Weiss or Kevin Jung should be eliminated as part of the reorganization?

A.     Okay. I have no specific recollection of that discussion.

Q.     Did you have a communication with Joe McAlinden concerning the choice between Alice Weiss and Kevin Jung as to whose job should be eliminated?

A.     No specific recollection of that discussion.

(Gupta Dep. at pp. 70, 80-82)

While Mr .Gupta danced around conjecturing about the role he may have played on the

selection of Ms. Weiss for discharge he was plain he was not the decision maker.  Similarly, Mr.

McAlinden testified as follows:

Q.     Was Alice Weiss terminated in connection with this 2003 reduction in force?

A.     I believe so, yeah.

Q.     And who made that decision?

A.     Ultimately, I would say the 50 odd people that were eliminated would have been my final decision, probably from some input in some cases by Mr. Merin, because I would have reviewed it with him.  So I was the CIO, so you have to say it was my decision.

Q.     Well, did you approve a recommendation that was made by someone else that Alice Weiss should be terminated?

A.     I don't remember specifically, but logically that's the way it would have worked.

Q.     And who would have made that recommendation to you?

A.     I mean, I think it would have come from Mr. Rutherfurd . . .

Q.     Well, with regard to Ms. Weiss in particular, did you play any role other than approving the recommendation that she be one of the people selected for the reduction in force that was made by someone else, whether it was Mr. Rutherfurd or someone else?

13

A.  That would have been the role as you just characterized it.

Q.  The approval of a decision made by someone else?

A.  Yes.

(McAlinden Dep. at pp. 52-54.)

Lastly, Guy Rutherfurd, to whom Ms. Weiss directly reported, was adamant, contrary to

Mr. McAlinden's testimony, that he did not make the Alice Weiss termination decision:

> Q.  So did Morgan Stanley, the institution, make a choice as
> between Alice Weiss and Kevin Jung as to who to let go and who
> to keep to manage this fund?
>
> A.  Yes.
>
> Q.  Did you make, do you know who, what human being at
> Morgan Stanley made that choice?
>
> A.  No.
>
> Q.  It was not you?
>
> A.  No. I did not, I no longer had the authority after that date, I,
> too, was a victim of this.
>
> Q.  In what respect were you a victim of that reduction in
> force? You meant you were a victim of the reduction in force?
>
> A.  Yes.

(Rutherfurd Dep. at p. 51.)

While all three danced around the ultimate question regarding who selected Alice Weiss

for termination when pressed they all were very clear in their testimony that each did not. Who

did?  Morgan Stanley cannot maintain that retaliation did not play a substantial role in Ms.

Weiss' termination, while being unable to offer up the decision-maker who selected her.

While Messrs. McAlinden and Rutherfurd professed to vague recollections of discussions

14

in the summer of 2003 about potentially selecting Ms. Weiss for a RIF if one were to actually occur, these discussions were characterized by Mr. Rutherfurd as "hypothetical" and occurred well before the RIF. *No decision was made at that time regarding Ms. Weiss.* With regard to the actual decision to fire Ms. Weiss – which by all accounts did not occur until the latter part of September – Morgan Stanley is unable to say who selected her and can only speculate as to why she was selected. More significantly, the sworn testimony of the Morgan Stanley officers involved directly contradicts the RIF documents Morgan Stanley produced, raising serious questions concerning the authenticity of the documents.

Finally, Donna Litvinsky was also clear that she only played a human resources role in Ms. Weiss' termination and she was not the person who decided to include her in the RIF. (Litvinsky Dep. at pp. 23-26, 56). Further, Ms. Litvinsky identified Messrs. Gupta and Rutherfurd as the decision-makers, a role both of them denied having.

     **c.**    **The RIF document identifying Ms. Weiss as selected for termination on and selected by Messrs. Gupta and Rutherfurd is plainly false and flies in the face of the testimony of Morgan Stanley managers**

Morgan Stanley's Reduction in Force Questionnaire for Alice Weiss states that the decision to terminate her employment was completed on July 22, 2003 and identifies the decision-makers as Guy Rutherfurd and Rajesh Gupta. [For a copy of the RIF Questionnaire See Exhibit "H" attached to the Kaiser Declaration] The unambiguous deposition testimony of all of the relevant Morgan Stanley executives, including Messrs. Rutherfurd and Gupta, demonstrated that this document is false and raises serious questions about how and when certain information was filled in on the questionnaire.

15

Messrs. Rutherfurd and Gupta both denied playing the role of decision-maker and Messrs. Gupta, McAlinden, and Rutherfurd all testified that whoever made the decision they first learned of it in sometime in late September 2003. While there may have been preliminary discussions about and planning for a possible RIF in the summer of that year, no decision about Alice Weiss was completed prior to sometime in the latter part of September. Morgan Stanley conveniently filled out the document at some point to falsely reflect earlier decision making. The deposition testimony has now definitively exposed the fraud.

### d.    Ms. Weiss was more qualified than Kevin Jung

Kevin Jung, a male in his late 20s when he started at Morgan Stanley in August 1997, was hired as a Vice President, (the same level Ms. Weiss had held for 7 years) but had little or no prior experience in managing active or quantitative funds. Mr. Jung was assigned to share Ms. Weiss's office for a year – even though there was enough space so he could have had his own office – while she trained and mentored him at management's request.

Ms. Weiss continued to propose new fund ideas (her ideas had let to the establishment of funds which had brought in almost $5 billion in assets and more than $70 million annually in fees to Morgan Stanley) while Mr. Jung proposed no fund ideas. In fact, Jung was hired to manage one of the funds that Ms. Weiss had proposed but was refused as an assignment. Ms. Weiss's Value Added Fund did very well – it was the highest-rated fund at Morgan Stanley.

In December 2002, Mr. Jung was promoted to Executive Director while Ms. Weiss remained a Vice President. Yet, during Ms. Weiss's management of the Value Added Fund it remained the highest-rated fund at Morgan Stanley – receiving a 5-star Morningstar rating for the three- five- and 10-year periods preceding her termination.

e. **Morgan Stanley made no effort to reassign Ms. Weiss, a twenty-year veteran with a stellar track record, as compared to its efforts to reassign many of its other professionals**

As part of its reorganization, many of its long term employees were reassigned to other positions. By contrast, there was no effort to reassign Ms. Weiss. Why would the firm not attempt to place a portfolio manager with Ms. Weiss' experience somewhere else? Their failure to even consider the issue with Ms. Weiss when it was routinely explored with so many others raises an inference of retaliation.

Certainly, based on the above evidence, a reasonable juror could infer that Morgan Stanley is lying about the circumstances of Ms. Weiss's discharge.

f. **The RIF document for Brian Mazzella who principally Worked for Ms. Weiss indicated he was terminated on September 29, 2007**

Mr. Mazzela's RIF questionnaire states that his termination decision was completed on September 29, 2003. [For a copy of Brian Massela's RIF Questionnaire See Exhibit "I" attached to the Kaiser Declaration] This date is consistent with Ms. Weiss being fired only *after* her September 25, 2003 discrimination complaint. It was only after Morgan Stanley knew Ms. Weiss was being discharged that it also knew Mr. Mazzela, who worked primarily for her, would also be terminated. This further raises questions about when the "date completed" section of Ms. Weiss' RIF questionnaire was actually filled in.

## POINT IV

**MS. WEISS HAS ALSO DEMONSTRATED NOT ONLY A PRIMA FACIE CASE, BUT SUBSTANTIAL EVIDENCE OF**

**GENDER DISCRIMINATION BASED ON NUMEROUS ACTS WHICH ARE MATERIALLY ADVERSE AND WHICH CONSTITUTE ACTIONABLE DISCRIMINATION BASED ON UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT**

Morgan Stanley also claims that Ms. Weiss cannot make out a prima case of discrimination under the standard in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), whether based on age, race or retaliation. Def's Brief at 10 (Point IV.A.) For the reasons set forth below, this argument also must fail.

A.    Prima Facie Case

The plaintiff's burden to present a prima facie case under *McDonnell Douglas* is "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2nd Cir. 2000); *Scaria v. Rubin*, 117 F.3d 652, 654 (2nd Cir.1997) ("The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal"); *Chambers*, 43 F.3d at 37 ("[T]he burden that must be met by an employment discrimination plaintiff to survive summary judgment motion 'at the prima facie stage is de minim[i]s.'") (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2nd Cir.1988)).

Contrary to Morgan Stanley's contention, Ms. Weiss has established a prima facie case for gender discrimination. Ms. Weiss has submitted evidence of her gender (female), her substantial educational qualifications and her professional experience and management success establishing her qualifications for the positions she both held and sought.

B.    Adverse Employment Actions

Likewise, Ms. Weiss has demonstrated through record evidence that she suffered numerous adverse employment actions, including, without limitation:

18

Failure to promote (Weiss Decl. at ¶¶ 7-9);

Failure to compensate her comparably with her male colleagues (Weiss Decl. at ¶ 12 and Exh. B; Kaiser Decl. Exh. L; Def's Exhs. 24-27);

Refusal to allow her professional growth and development, before 1996 and especially after 2000 (Weiss Decl. at ¶ 6);

Failing to credit her successes and contributions, such as failing to list her as fund manager on prospectuses even though she had sole responsibility for day-to-day management, and refusing to let her speak on behalf of the fund both within the firm and also the outside world, and instead attributing the managerial success and raising the profiles of others (Weiss Decl. at ¶ 5 and Exh. B) – all factors that reduced Ms. Weiss's profile and standing within and without the firm which ties into Morgan Stanley's claim that Ms. Weiss did not exhibit promotionable traits to the same level as those who were promoted;

Allowing others like Mr. Jung, but refusing to permit her to engage in certain duties such as futures trading that could have enhanced her professional standing, growth and promotional status (Jung Dep. at 164; Weiss Decl. at ¶ 14; Def's Exh. 45).

In *Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 798 (2nd Cir. 1997), the Second Circuit vacated the district court's grant of judgment on a Title VII race and national origin claim. In that case, the plaintiff claimed he was excluded from departmental meetings and outings with clients as well as suffering a change in his job responsibilities to largely clerical following his complaints about memoranda he believed to demonstrate bias against minorities, women, older workers and Americans. The circuit court reversed this Court's conclusion that the plaintiff had not suffered an adverse employment action, and remanded the matter for trial, concluding that "[t]he prohibition against discrimination is not limited to 'pecuniary emoluments' but includes discriminatorily-motivated diminution of duties." See also *De La Cruz v. New York City Human Resources Admin.*, 82 F.3d 16, 20-22 (2nd Cir. 1996) (actions which allegedly resulted in fewer promotional opportunities and less opportunity for growth "is sufficient to satisfy the third prong of the *McDonnell-Douglas* prima facie test.")

In *Curley v. St. John's Univ.*, 199 F.Supp.2d 181 (S.D.N.Y. 1998), this Court reiterated that the definition of "material" and "adverse" are broad enough to encompass non-economic changes in employment, and suggested that the plaintiff's change in teaching duties from graduate to undergraduate level courses could be enough to satisfy as a material adverse action under Title VII.

Clearly when viewed together, but even considered individually, the above adverse employment actions which diminished Ms. Weiss's professional standing, and hindered her career development and professional growth, are sufficiently material to constitute actionable adverse employment actions.

C.    Defendant's Burden of Production

Morgan Stanley explains away Ms. Weiss's failure to be promoted based on the alleged better performance of others who were promoted. Notably, however, Morgan Stanley has not articulated a non-discriminatory reason for the differences in supporting its failure to provide Ms. Weiss with the recognition, or the opportunity for recognition of her achievements and her profile within and without the firm, which was harmful to her career as articulated by Ms. Weiss. (Weiss Decl. at ¶¶ 3-6). Nor except for its contention – contradicted by its own witnesses – that Ms. Weiss was legitimately selected for downsizing, does Morgan Stanley provide any valid business reason for any of the other discriminatory conduct described by Ms. Weiss. Hence, the largely fails to satisfy its burden of production.

D.    Evidence of Pretext

In order to demonstrate a pretext, a plaintiff may rely on the same evidence used to support a prima facie case. "[A] plaintiff's prima facie case, combined with sufficient evidence

to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148; *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 402 (2nd Cir. 1998) (citing *Gallo*, 22 F.3d at 1225).

Here, an inference of discrimination can be drawn from the fact that Morgan Stanley repeatedly for years failed and refused to list Ms. Weiss as the manager of the Value-Added Fund even when there can be no argument that she did so on her own and therefore was misrepresenting the status of the fund's management – even Mr. Gupta could offer no explanation for why she was not listed. (Gupta Dep. at 43-45) – and also failed to compensate her the same has her male counterparts, almost universally refused to let her speak and interact within the firm and the outside world for the fund, and forced her to languish as a Vice President – a title she held when Morgan Stanley merged with her former firm, Dean Witter, and never promoted from by Morgan Stanley.

**MS WEISS'S COMPLAINT, AS WELL AS HER EEOC
FILING, CONTAINED ALLEGATIONS OF ON-GOING
DISCRIMINATORY CONDUCT OCCURRING BOTH
WITHIN AND WITHOUT THE FILING PERIOD; AND
THERE ARE PENDENT STATE AND LOCAL LAW
CLAIMS WHICH REACH BACK BEYOND 300 DAYS**

A.    Plaintiff's Title VII Claims

Morgan Stanley argues that this Court lacks jurisdiction because Ms. Weiss's

administrative complaint and her complaint in this Court includes conduct – specifically missed

promotions – occurring prior to 300 days before her EEOC filing, citing *National Railroad*

*Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). This is not correct.

Although Ms. Weiss may not be able to obtain monetary damages under Title VII to the

extent that those missed promotions constitute "discrete discriminatory acts" which occurred

outside the requisite period, nevertheless, in *Morgan* the Supreme Court made clear that conduct

occurring outside the statutory filing period did not necessarily mean that all the claims were

barred, if there were independent discriminatory acts which were the subject of a timely-filed

administrative complaint:

> The existence of past acts and the employee's prior knowledge of her
> occurrence, however, does not bar employees from filing charges about related
> discrete acts so long as the acts are independently discriminatory and charges
> addressing those acts are themselves timely filed. Nor does the statute bar an
> employee from using the prior acts as background evidence in support of a timely
> claim.

536 U.S. at 113. The High Court continued:

> The timely filing provision only requires that a Title VII plaintiff file a
> charge within a certain number of days after the unlawful practice happened. It
> does not matter, for purposes of the statute, that some of the component acts of
> the hostile work environment fall outside the statutory time period. Provided that

> an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred' even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

536 U.S. at 117. Clearly, under *Morgan*, the Supreme Court indicated that even discrete discriminatory acts, like promotions, could nevertheless be used as evidence in support of a claim of continuous discrimination, such as Ms. Weiss alleged in both her EEOC administrative filing and in her complaint in this Court, and she should be allowed to present that evidence at trial.

Moreover, as Morgan Stanley plainly concedes, Ms. Weiss's Title VII claims are not based solely on actions which occurred in 2003, including the missed promotion in that year, which are the basis for its argument. Her claims also include repeated denials of career-enhancing opportunities and, eventually, her firing, which altered the terms and conditions of her employment and was motivated by discriminatory animus and/or in retaliation for her complaints of discrimination.

The discrimination which Ms. Weiss alleged and testified about constitutes a continuing violation of discriminatory conduct not dissimilar to that in *Cornwell v. Robinson*, 23 F.3d 694 (2nd Cir. 1994), a case involving sexual harassment in which the Second Circuit held that incidents spanning over five years, constituted a continuing violation:

> In the present case, the district court correctly ruled that the discrimination and harassment suffered by Cornwell was a continuing violation that began in 1981 and did not end until she finally left MacCormick in 1986. This ruling was supported by the same evidence that established her hostile-environment claim,

> which required her to show harassment 'sufficiently severe or pervasive 'to alter the conditions of [her] employment and create an abusive working environment . . . .

23 F.3d at 704.

Ms. Weiss should be offered the opportunity to offer evidence to the finder of fact of discrimination against her. See *Katz v. City of New York*, 1996 U.S. Dist. LEXIS 15430, *6 (S.D.N.Y.1996) (allegations that defendant "knowingly allowed the acts of discrimination to continue in that it had knowledge of her claims and took no action."); *Rivera v. Puerto Rican Home Attendants Services, Inc.*, 930 F. Supp. 124, 131 (S.D.N.Y. 1996)(complaint sufficiently alleged continuing violation, where plaintiff alleged continuous pattern of harassment that extended beyond Title VII's statutory period); *Engelmann v. National Broadcasting Co.*, 1996 WL 76107, * 15 (S.D.N.Y. 1996)(plaintiff's claims of hostile environment were not time-barred by Title VII's statute of limitations, where plaintiff alleged that the "offensive acts continued until her termination," and filed her claim within 300 days of her termination); *Streeter v. Joint Industry Bd of Electrical Industry*, 767 F. Supp. 520, 526 (S.D.N.Y. 1991)(the complaint properly alleged a continuing violation, where plaintiff pleaded that a "continuous practice and policy of sexual harassment," existed "both before and during the limitations period").

In this case, Ms. Weiss's allegations of acts of discrimination over the months and even years preceding her retaliatory inclusion in the RIF are like the "'links in a chain' of alleged continuous discriminatory conduct" referenced by Judge Spatt in *Shay v. Brady*, 926 F.Supp. 1197, 1213 (E.D.N.Y. 1996). In that case, despite arguments similar to that raised by the defendant government in that case, Judge Spatt, relying on *Smith v. American President Lines Ltd.*, 571 F.2d 102, 109 (2nd Cir. 1978) refused to find as untimely the federal employee's claims

24

which were not raised to an EEO counselor within the applicable administrative complaint period.

Because Ms. Weiss's administrative complaint includes discriminatory conduct occurring within 300 days of the date she filed her administrative complaint with the EEOC, as well as retaliatory and discriminatory acts occurring after the filing, she still has viable claims under Title VII over this Court should let the jury decide. And with respect to the alleged discriminatory conduct occurring more than 300 days before July 13, 2004 – the date Ms. Weiss filed her administrative complaint with the EEOC – this Court should permit Ms. Weiss to use the evidence of these acts in connection with her efforts to show liability concerning discriminatory conduct which would be considered timely filed in accordance with the dicta in *Morgan* and the other precedent.

B.    Plaintiff's Pendent State and Local Claims

Morgan Stanley correctly notes that, in addition to her Title VII claims which encompass acts occurring before, during and after the 300-day filing period, Ms. Weiss also has pendent claims under the New York State and City anti-discrimination statutes. Those claims are also timely as they were brought on March 29, 2005, within three years of her retaliatory termination on September 30, 2003.

## POINT VI

### MORGAN STANLEY HAS NOT CARRIED ITS BURDEN TO PROVE IT IS ENTITLED TO CUT OFF MS. WEISS'S DAMAGES FOR OMISSIONS OR MISSTATEMENTS IN APPLYING FOR A JOB WITH DEAN WITTER

Relying on *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), Morgan Stanley argues that the Court should as a matter of law cut off Ms. Weiss's damages because in 1982 when she completed her employment application for Dean Witter (which merged with Morgan Stanley 15 years later), she failed to fully disclose that when her former employer Bache & Co. would not allow her to return to her job after she took maternity leave – in violation of gender and disability discrimination laws – she filed a complaint with the EEOC and for a few months thereafter worked in a few other jobs before applying to Dean Witter. This argument should fail for several reasons.

Firstly, it cannot be said that the failure of an employer to allow an employee to return from maternity leave constitutes being "fired" calling into question the whole premise of the accuracy of the response. Secondly, Morgan Stanley cannot credibly claim that Dean Witter would have refused to hire Ms. Weiss had it known that she had engaged in protected activity under the anti-discrimination laws. That would be against the law.

More importantly, the alleged omissions themselves are not material or bear on her qualifications (or lack thereof) for her employment then or now – unlike, for example, non-disclosure of a criminal background, falsifying educational or licensure qualifications, or termination for gross misconduct in prior employment. See e.g., *Johnson v. Honeywell Information Systems, Inc.*, 955 F.2d 409, 411 (6th Cir. 1992) (the omission "must be material, directly related to measuring a candidate for employment, and [must have been] relied upon by

26

the employer in making the hiring decision.") As the Court explained in *McKinnon*, "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon,* 513 U.S. at 362-63. Thus, the employer has the burden of showing that it *would have* discharged the employee because of the misconduct, not simply that it *could have* done so.

Here, Morgan Stanley has not demonstrated its legal entitlement to the relief sought. Rather, what it really has demonstrated is that it has in some instances fired employees who have provided false and/or incomplete information on their employment applications. However, Morgan Stanley has not directed this Court to any evidence demonstrating that it necessarily would have in fact fired Ms. Weiss based on what can best be characterized as an immaterial omission more than 26 years ago on her employment application to Dean Witter. Morgan Stanley has not provided the Court with the specifics of the circumstances of any other employees, similarly situated to Ms. Weiss, who were terminated for similar misrepresentations or omissions. Thus, neither the Court nor counsel have comparative information with which to assess the plaintiff's situation.

Hence, there exist genuine issues of material fact as to whether plaintiff's alleged wrongdoing was sufficiently material and serious such that Morgan Stanley would have discharged plaintiff on that basis alone had that information been known at the time of plaintiff's discharge. See e.g., *Roberts v. Sedgwick Co. Sheriff's Dep't.* 302 F.Supp.2d 1256, 1267 (D.Kan. 2004); *Flores v. Buy Buy Baby, Inc.*, 118 F.Supp.2d 425 (S.D.N.Y. 2000).

## **CONCLUSION**

For all of the foregoing reasons, the plaintiff, Alice Weiss, respectfully submits that the

Court should deny the defendant's motion in its entirety.

Dated: New York, New York
November 7, 2007

Kaiser Saurborn & Mair, P.C.
Attorneys for Plaintiff

By: _____/s/_____
Daniel J. Kaiser [DK-9387]

111 Broadway, 18th floor
New York, New York 10006
(212) 338-9100