UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
                                                             :

ALICE WEISS,                                         :

                                     Plaintiff,     :

                                                      :     <u>MEMORANDUM DECISION</u>
            -against-                            :         <u>AND ORDER</u>

                                                        :     05 CV 3310 (GBD)

MORGAN STANLEY INVESTMENT      :
MANAGEMENT,                                   :

                                  Defendant.    :

------------------------------------ x

GEORGE B. DANIELS, District Judge

      Plaintiff Alice Weiss ("plaintiff") brought suit against her former employer, Morgan Stanley Investment Management ("Morgan Stanley" or "defendant"), alleging gender, religious, national origin, and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York City Human Rights Law ("NYCHRL"), and the Age Discrimination in Employment Act ("ADEA"). Plaintiff contends that the decision to terminate her, as well defendant's failure to promote her from Vice President to the position of Executive Director, were the result of discrimination on the basis of her gender, religion, national origin, and age. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant's motion for summary judgment is granted.

      Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); June v. Town of Westfield, 370 F.3d 255, 257 (2d Cir. 2004). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, this Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256) (internal quotations omitted). "[U]nsupported allegations do not create a material issue of fact." Id. Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. Byrnie v. Town of Cromwell, 243 F.3d 93, 101 (2d Cir. 2001) (citing Anderson, 477 U.S. at 248; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 998)).

## MATERIAL FACTS

Plaintiff began her career as a Statistician in the InterCapital Division of Dean Witter in March 1982. Around 1984, plaintiff was promoted from Statistician to assistant portfolio manager. She also received the title promotion to Assistant Vice President in 1985. (Pl. Dep. at 114). In approximately 1990, plaintiff was promoted to Vice President. (Deft. Rule 56.1 Stmt., ¶ 17). In 1997, Dean Witter merged with Morgan Stanley to form Morgan Stanley Investment Management. Plaintiff remained an employee of the merged entity as a Vice President until she was selected for termination in 2003.

Prior to her termination, plaintiff was responsible at different times for the management of two index funds: Morgan Stanley's KLD Social Index Fund and the Value Added Market Series Mutual Fund ("the Value Added Fund"), a fund she proposed and Morgan Stanley launched. (Pl. Dep. at 130, 137, 193-99; see Lunetta Aff. at Ex. 14). Index funds are tied to a particular index, such as the Standard & Poor's ("S&P") 500, and generally only invest in those stocks that are represented in the index. (Deft. Rule 56.1 Stmt., ¶19). Such funds do not require active management, as the fund manager generally buys shares of the same stocks, and in the same proportion, as held in the relevant index. (Id.) Although the Value Added Fund was considered an index fund because it was tied to the S&P 500, there was no precise index that matched that fund. (Id., ¶ 22). Instead, the Value Added Fund invested in each stock contained in the S&P 500 in approximately equal proportions and aimed to hold approximately 0.2% of each stock at any given time. (Id., ¶ 57). As a result, plaintiff contends, and defendant does not dispute, the Value Added Fund required more active management than a pure index fund. (Id., ¶ 19).

Keeping the stocks of the Value Added Fund in equal and correct proportion required the regular rebalancing of the fund and necessitated the buying and selling of shares. (Id., ¶ 59). The Value Added Fund prospectus initially required rebalancing be done on a quarterly basis. (Id., ¶ 63). Beginning in 1999, plaintiff made various suggestions concerning rebalancing, including widening the equally weighted range from its 0.2% target and rebalancing on a semi-annual, rather than quarterly basis. (Id., ¶ 64). In Fall 2002, the performance and management of the Value Added Fund were reviewed and defendant concluded that plaintiff had failed to manage the fund according to the parameters set out in the fund prospectus; the fund had not

been reviewed at least annually and the stocks in the fund were not at or near holdings of 0.2%. (Id., ¶ 68, 71). Thereafter, plaintiff's supervisors met about plaintiff's management of the fund and discussed her possible termination. (Id., ¶ 72, Pl. Rule 56.1 Stmt., ¶ 72). Plaintiff's immediate supervisor, who plaintiff now has accused of discriminating against her, objected to her termination, but suggested instead that plaintiff be supervised more closely. (Id.; Lunetta Aff. at Ex. 58).

On June 19, 2003, Plaintiff's supervisor instructed plaintiff to rebalance the fund on a quarterly basis and ensure that all stocks were held within a range of .19% and .21% beginning with the June 30, 2003 rebalancing. (Id., ¶ 75). On June 24, 2003, plaintiff sent an email to her supervisors informing them that, for the June rebalancing, she would not rebalance stocks with an .185% holding and with a .215% holding and would include them in the .19%-21% range, even though they fell outside of the acceptable range. (See email dated June 24, 2003, attached to Lunetta Aff. at Ex. 56). Plaintiff's supervisor interpreted plaintiff's actions as blatantly contradicting the directive to rebalance all stocks within the .19% to .21% range. They directed plaintiff to stay home the following day. (Deft. Rule 56.1 Stmt., ¶ 77-78). Plaintiff returned to work on June 26, 2003 and proceeded with the required rebalancing, albeit under the supervision of senior managers. (Id., ¶ 80).

At the same time, a review of the Global Investor Group, plaintiff's larger work group, was being conducted to see where efficiencies and reductions could be made. (Deft. Rule 56.1 Stmt., ¶ 83). The review revealed that plaintiff's Value Added Fund, now a purely passive fund, no longer needed a dedicated portfolio manager. (Id., ¶ 85). Plaintiff was compared with another male portfolio manager to determine which one of the two managers would remain in Morgan

Stanley's employ. It was determined that although plaintiff had enjoyed a longer tenure at the firm, the other manager was better suited to take over plaintiff's duties, while simultaneously managing his own responsibilities. (Id., ¶ 91). Morgan Stanley memorialized its evaluation in a July 22, 2003 document, which indicates that plaintiff was to be terminated September 30, 2003. (Lunetta Aff. at Ex. 63). The document was reviewed by Morgan Stanley's legal department on September 11, 2003, and the termination decision was approved on September 19, 2003.

On September 25, 2003, plaintiff met with her supervisor, who informed her that she was not being considered for promotion to Executive Director. Plaintiff then informed her supervisor that she felt she was being discriminated against on the basis of gender and age. Plaintiff's supervisor informed plaintiff that he wanted to discuss the matter further and immediately reported the complaint to the human resources department. On September 30, 2003, plaintiff received her notice of termination.

On July 13, 2004, plaintiff lodged a complaint against her employer, charging gender, age, and national origin discrimination, and retaliatory discharge, with the Equal Employment Opportunity Commission ("EEOC"). On December 21, 2004, the EEOC informed plaintiff that it was unable to conclude that Morgan Stanley had violated federal law, that most of plaintiff's allegations were untimely, and that plaintiff's retaliation charge had been successfully rebutted by Morgan Stanley. (Lunetta Aff. at Ex. 74). The EEOC provided plaintiff with a right-to-sue letter, thereby permitting her to pursue her lawsuit in federal district court. Thereafter, plaintiff filed suit against defendant in this Court on her discrimination and retaliation claims.

Plaintiff alleges that, at various instances during her twenty-one year tenure, Morgan Stanley and its agents discriminated against her. Plaintiff claims that in 1987, a former

supervisor told her that senior management requested plaintiff's name be removed from a fund prospectus, a document distributed to investors, because plaintiff, a religious Jew, did not "fit the mold." (Pl. Dep. at 392). Without alleging any specific discriminatory adverse employment action, plaintiff claims that senior management at the investment firm "did not believe that women should be in any sort of higher position, other than perhaps a secretary." (Id. at 395.) She also alleges that from approximately 1992 to 1998 she reported to a supervisor who persisted in "harassing me all the time." (Pl. Dep. at 97). However, she contends that any harassment stopped in 1998 when, against her wishes, a female colleague informed the human resources department of the conflict. Thereafter, Morgan Stanley reassigned plaintiff to report to another supervisor. Plaintiff never complained of discrimination after her reassignment until September 25, 2003, when she was told that she would not be further promoted.

## GENDER DISCRIMINATION

In her Amended Complaint, Plaintiff alleges that defendant illegally discriminated against her on the basis of gender, religion, national origin, and age,[1] in violation of Title VII, ADEA, and the New York City Human Rights Law ("NYCHRL"). Plaintiff contends that she was illegally: (1) denied promotion from Vice President to Executive Director; (2) paid less; (3) terminated from her position; and (4) otherwise discriminated against in the workplace.

*A. Plaintiff's Untimely Claims*

In actions under Title VII, a plaintiff can sue in federal court only after filing timely charges with the EEOC. See 42 U.S.C. § 2000e-5(f)(1); Holowecki v. Fed. Express Corp., 440

---

[1] In her response, plaintiff did not challenge defendant's motion for summary judgment as it relates to her religion, national origin, and age discrimination claims. Nonetheless, this Court has searched the record in vain for any evidence supporting those claims.

F.3d 558, 562-63 (2d Cir. 2006).  A Title VII plaintiff must file charges within 300 days of the occurrence of the allegedly discriminatory action.  42 U.S.C. § 2000e-5(e)(1); McPherson v. New York City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006).  In Title VII actions, discrete discriminatory acts that occur prior to the 300 day period are not actionable even if they relate to other timely filed charges.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).  "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." Morgan, 536 U.S. at 113.  A private Title VII plaintiff must also first receive a "right-to-sue" letter from the EEOC.  42 U.S.C. § 2000e-5(f)(1); Holowecki, 440 F.3d at 563.

In this case, plaintiff filed charges on July 13, 2004 and received her right to sue letter. Plaintiff has alleged various discrete discriminatory acts extending over the entirety of her twenty-one year tenure with Morgan Stanley, and its predecessor, Dean Witter.  The relevant period for plaintiff's actionable Title VII claims began on September 18, 2003, 300 days prior to plaintiff filing her EEOC charge.  Similarly, plaintiff's NYCHRL claims are actionable only to the extent that they occurred on or after March 29, 2002, three years prior to plaintiff filling suit in this Court.  See N.Y. C.P.L.R. § 214(2) (McKinney 2003); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).

B. *Analysis of Plaintiff's Timely Claims Under the McDonnell Douglas Standard*

Plaintiff's timely claims are all analyzed pursuant to the three-part test set out in

McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d. Cir. 2001).  First, a plaintiff must prove by a preponderance of the evidence, a *prima facie* case of discrimination.  Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000).  The burden here is *de minimus*.  Abdu-Brisson, 239 F. 3d at 467.  Second, if a plaintiff makes such a showing, the burden then shifts to defendants to articulate a legitimate, non-discriminatory business rationale for the adverse action about which plaintiff is complaining.  Id. at 466 (citing McDonnell Douglas, 411 U.S. at 802-04).  "If the employer articulates such a reason, the presumption of...discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that...discrimination was the true reason for the adverse employment action." Id.

To establish a prima facie case of gender discrimination, a plaintiff must show four things: (1) she is a member of the protected class; (2) she is qualified for her position; (3) she has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination.  See id.  There is no serious dispute between the parties that plaintiff satisfies the first three requirements.[2]  However, there is no evidence to support a

---

[2] There is no question that denial or promotion and termination constitute adverse employment actions.  The parties, however, disagree sharply over whether several of plaintiff's other claims constitute adverse employment actions.  Plaintiff also contends: (1) that she was given less favorable office space than a younger, male employee; (2) that defendant failed to list her on fund prospectuses; (3) that she was not allowed to attend various professional conferences; and (4) that she was paid less than younger, male, and non-religious employees.  This Court summarily rejects plaintiff's assertion that not being assigned a window seat in a shared office constitutes an adverse employment action.  Plaintiff also conceded that at times it would have been inappropriate to list her on a fund prospectus, as her title was 'assistant portfolio manager', notwithstanding her belief that she singlehandedly managed the fund.  (Pl. Dep. at 130-32.).  Plaintiff attended professional development conferences in both 2002 and 2003, the relevant statutory period.  (Id. at 412).  Discrepancy in pay, if true, might constitute an adverse employment action.  De La Cruz v. New York City Human Res. Admin., 82 F.3d 16, 20-

conclusion that the circumstances surrounding plaintiff's denial of promotion, termination, or any other adverse action taken by Morgan Stanley, give rise to an inference of gender discrimination. It is not enough for a plaintiff to merely allege discrimination. At the summary judgment stage, plaintiff must provide the Court with evidence of such discrimination. Plaintiff has failed to do so.

Plaintiff claims to have "submitted evidence of her gender (female), her substantial educational qualifications and her professional experience and management success establishing her qualifications for the positions she both held and sought," (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 18). According to plaintiff, members of firm management "did not believe that woman should be in any sort of higher position, other than perhaps a secretary." (Pl. Dep. at 395). There are no facts to support plaintiff's bare allegations.

The record reveals no evidence that plaintiff's status as a female or a member of any other protected class, in any way, prevented her from advancing professionally through Morgan Stanley's ranks, or receiving treatment and compensation equal or greater to similarly situated employees. Nor is there evidence from which to infer that plaintiff's termination was motivated by discriminatory animus.

Plaintiff received the second highest bonus and compensation package of her colleagues. She was paid more than four out of five Vice Presidents in the Core Growth Group, all of whom

---

22 (2d Cir. 1996) (action which allegedly resulted in fewer opportunities for professional growth and promotion is "sufficient to satisfy the third prong of the McDonnell-Douglas prima facie test."). However, there are no facts in the record indicating gender-based disparities in salary or promotion.

were male.[3]  (See Lunetta Aff. at Ex. 27).  Plaintiff received successive promotions from Statistician to Vice President during her tenure at Dean Witter, and later, Morgan Stanley.  The fact that plaintiff was not promoted beyond the Vice President position is not unusual, nor does it raise an inference of discrimination.  There is no direct or circumstantial evidence that plaintiff was denied further promotion because of her gender.  Plaintiff understood, and defendant's internal promotion policies make clear, that longevity with the firm does not guarantee future advancement in the firm.  Several of plaintiff's male colleagues in the Core Growth team never received promotion beyond the Vice President level, notwithstanding their comparable experience.  (Lunetta Aff. at Ex. 24-26).

There is no dispute that plaintiff was a competent employee with years of service and experience.  However, defendant felt that plaintiff lacked the requisite skills and initiative necessary for further promotion.  The results of plaintiff's 2002 reviews only support defendant's position.  Both reviewers gave mediocre scores, which plaintiff agreed might not have been sufficient to warrant her further promotion.  (See Lunetta Aff. at Ex. 42; Pl. Dep. at 567).

Plaintiff has presented no evidence that defendant discriminatorily denied her promotion on the basis of gender.  Although plaintiff disagrees with defendant's characterization of her work performance, this Court will not "delve into the question of which portrayal is the correct one because this Court does not sit as a super-personnel department that reexamines an entity's business decisions."  Rosen v. Columbia Univ., No. 92 Civ. 6330, 1995 WL 464991, at *7

---

[3]Plaintiff argues that she was paid less than several of her male supervisors or other senior managers, and should be compared with them, and not with other Vice Presidents, for purposes of this motion.   However, plaintiff has presented no evidence to support her own opinion that she should have been paid the same amount as employees with higher positions or greater stated responsibilities at Morgan Stanley.

(S.D.N.Y. Aug. 7, 1995) (granting summary judgment), aff'd, 101 F.3d 108 (2d Cir. 1996).

Likewise, plaintiff does not point to any evidence that defendant discriminated against her on any basis, in its decision to include plaintiff in the RIF.  Plaintiff does not dispute that on or around September 30, 2003, Morgan Stanley underwent a large-scale reorganization, which resulted in the lay-offs of fifty-three employees of both genders (and all ages and of diverse backgrounds) from plaintiff's work group.  Plaintiff even admits that her male assistant lost his position at the firm at the same time as a result of the RIF.  (Pl. Rule 56 Stmt., ¶ 27).  There is no evidence that women were discriminatorily targeted for termination pursuant to the RIF, nor is there any direct or circumstantial evidence that plaintiff, herself, was terminated because she was a woman.  On the contrary, the decision to terminate plaintiff was made after plaintiff was compared with one other employee, another portfolio manager, whom defendant found to be better qualified for the demands of the job.  (Lunetta Aff. at Ex. 63).

## RETALIATION

*A. Mc Donnell Douglas Standard*

Courts examine Title VII retaliation claims under the same three-pronged burden allocation test used in Title VII discrimination claims.  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). The McDonnell Douglas test, as applied to a motion for summary judgment in Title VII retaliation cases, requires: (1) plaintiff to demonstrate a *prima facie* case of retaliation; (2) defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action; and (3) if the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation.  Gallagher v. Delaney,

11

139 F.3d 338, 349 (2d Cir. 1998); see also Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 51 (2d Cir. 1998).

"A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as she can establish that she possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law. Treglia, 313 F.3d at 719 (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)(internal quotations omitted)).

*B. Plaintiff's Prima Facie Claim*

In order to establish a *prima facie* case of retaliatory discharge, plaintiff must show that: (1) she engaged in protected behavior; (2) the employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. Treglia, 313 F.3d at 719.

"Under 29 U.S.C. § 623(d), an individual has engaged in protected activity, if he has opposed any practice made unlawful by this section or has participated in any manner in an investigation, proceeding, or litigation under this chapter." Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir. 1989) (internal quotations omitted). It is not incumbent upon the individual to file a formal complaint with the EEOC in order for her action to constitute protected activity; Congress intended to protect a wide range of activity. Id. (collecting cases); see also, Bampoe v. Coach Stores, Inc., 93 F. Supp.2d 360, 372 (S.D.N.Y. 2000) (noting that, under Title VII, informal complaints, such as complaints to management, constitute protected activities).

Again, there is no serious dispute that plaintiff satisfies the first three prongs of the *prima*

12

*facie* test: she complained of age and gender discrimination to her supervisor (Pl. Amend. Compl., ¶ 69; Def. Rule 56 Stmt., ¶ 98); defendant was obviously aware of plaintiff's actions; and plaintiff was terminated soon thereafter from her position at Morgan Stanley.

The fact that plaintiff was fired a mere three days after her complaint, alone, provides a sufficient causal connection between plaintiff's complaint of discrimination and her termination. In the Second Circuit, "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citations omitted). See also Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) ("'The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001))); Quinn, 159 F.3d at 769 (finding that the causal connection requirement was satisfied simply because the plaintiff's discharge came less than two months after one complaint and just ten days after another); Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

C. *Defendant's Response*

The burden thus shifts to the defendant to demonstrate a legitimate, non-retaliatory reason for plaintiff's termination. Defendant provides evidence that plaintiff was selected for termination as part of a large scale reorganization that stemmed from financial troubles facing Morgan Stanley. The evidence indicates that plaintiff was selected for inclusion in the RIF as

early as June or July of 2003, and that plaintiff's termination came not as a result of her September 25, 2003 discrimination complaint. (Defendant's Reply Memorandum of Law in Support of Summary Judgement, 10).

In addition to affidavits, submitted by Morgan Stanley employees, stating that the decision to include plaintiff in the RIF was made in advance of her discrimination complaint, defendant has also proffered documentary evidence to prove Morgan Stanley intended to fire plaintiff in advance of her filing a complaint. In a RIF questionnaire dated July 22, 2003, plaintiff was compared to another Index Portfolio manager. Defendant praised plaintiff's colleague for "excelling at, among other things, working effectively with multiple products, being proficient on trading systems and executing last minute basket building." (Lunetta Aff. at Ex. 21). In regards to plaintiff's performance, defendant commented, "[t]hese strengths are not in Alice Weiss's evaluation." Id. Well in advance of plaintiff's September 2003 complaint, plaintiff had received a more negative review than her colleague. (See Lunetta Aff. at Ex. 63). One of these two Index Portfolio managers was to be let go in the RIF. Plaintiff was selected for termination because the other manager was believed to be "more versatile and better diversified than plaintiff." (Deft. Rule 56 Stmt., ¶¶ 85-93). The July RIF questionnaire also specifically lists plaintiff's anticipated release date as September 30, 2003. (Lunetta Aff. at Ex. 63). The document also indicates that it was reviewed by Morgan Stanley's legal department on September 11, 2003 and approved on September 19, 2003. The evidence demonstrates that this all occurred in advance of plaintiff's September 25, 2003 complaint of discrimination.[4] (Id.)

---

[4] Plaintiff argues that, given, the inconsistencies in the testimony of Morgan Stanley employees as to exactly what date and by whom plaintiff was fired, the documentary evidence must be a forgery. Such a speculative argument cannot suffice to raise a genuine issue of fact

Defendant's need to streamline its workforce is a major, but not the only reason defendant proffers for plaintiff's inclusion in the RIF. Towards the end of her career, plaintiff failed to heed directives concerning her fund and was disciplined as a result of her lack of responsiveness. Plaintiff has admitted that supervisors at Morgan Stanley discussed concerns about plaintiff's management of the Value-Added Fund and discussed terminating her prior to her firing in September 2003. (Deft. Rule 56.1 Stmt., ¶ 72, Pl. Rule 56.1 Stmt., ¶ 72). Plaintiff also knew her failure to re-balance her fund in accordance with her supervisor's directives resulted in her being sent home from work for one day and necessitated the bringing in of two colleagues to oversee the June 2003 rebalancing of the Value-Added Fund. (Pl. Rule 56.1 Stmt., ¶ 78, 80). Individuals coordinating the RIF process testified that plaintiff's performance factored into the final decision to terminate plaintiff. (Deft. Rule 56.1 Stmt., ¶ 87).

*C. Plaintiff's Proof of Pretext*

Defendant, having proffered evidence of a legitimate non-retaliatory reason for plaintiff's termination, shifts the burden back to plaintiff to offer sufficient potential proof that the reasons are pretextual. Plaintiff attempts to rebut defendant's non-retaliatory explanation for her firing by asserting that Morgan Stanley's employees lied about the date that plaintiff was selected for the RIF. In an affidavit to the EEOC, defendant's former supervisor wrote "the decision to eliminate Ms. Weiss' position was completed on July 22, 2003, long before the concern expressed by her to me on September 26, 2003." (Declaration of Daniel J. Kaiser ("Kaiser Decl."), at Ex. J). At his later deposition, however, the supervisor testified that he, in fact did not know when the decision to terminate plaintiff had been made. (Lunetta Aff. at Ex. 7, pp. 66-68).

---

regarding the document's authenticity.

15

Plaintiff also urges this Court to find pretext because Morgan Stanley employees could not recall who was directly responsible for recommending plaintiff's termination. (Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment, 12-15).

In this summary judgment action, plaintiff is "obliged to produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation for complaints of discrimination] was the real reason for the discharge." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir.1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994)) (alteration supplied).

Plaintiff's theories about defendant's truthfulness are not sufficient. There is no evidence that the July 22, 2003 RIF questionnaire, which indicates plaintiff's anticipated termination date was scheduled for September 30, 2003, was falsified. Plaintiff does not contest the fact that Morgan Stanley underwent a RIF, on or around September 30, 2003, which resulted in termination of dozens of employees, including her own male assistant. Morever, there is no evidence to which plaintiff can point to rebut defendant's non-retaliatory explanation that plaintiff was terminated because she was evaluated as a less valuable employee than another Index Portfolio manager. The evidence remains irrefutable that plaintiff was identified, evaluated, and selected for inclusion in a reduction in force prior to, and therefore, unrelated to any complaint she made on September 25, 2003.

## CONCLUSION

There is no evidence in the record sufficient to raise an issue of material fact that defendant or its agents discriminated against plaintiff on any basis during the relevant actionable

period of her employment. There is also no evidence that plaintiff was terminated in retaliation for complaining of gender and age discrimination. Defendant's motion for summary judgment is GRANTED.

Dated: New York, New York
      March 27, 2008

SO ORDERED:

*George B. Daniels*
GEORGE B DANIELS
United States District Judge

17